**CITY OF BROOK PARK, Appellee,**

v.

**SHORT, Appellant.**

[Cite as *Brook Park v. Short* (1989), 61 Ohio App.3d 519.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 55909.

Decided March 27, 1989.

*Neal M. Jamison,* for appellee.

*Scott I. Levey,* for appellant.

*Per Curiam.*

Defendant-appellant Russell Short appeals his conviction for operating an overweight vehicle on local streets in violation of Brook Park Codified Ordinances Section 339.02.

## I

The facts are not disputed. On February 25, 1988, Sergeant Andrew Miles of the Brook Park Police Department observed appellant driving a commercial tractor on Frye Road in Brook Park. A sign posted in the immediate vicinity indicated "THRU VEHICLES OVER 3½ TONS EMPTY WEIGHT PROHIBITED." As the officer's experience led him to believe that appellant's vehicle exceeded this weight restriction, Miles stopped appellant and requested his driver's license and registration. The registration indicated that the weight of the tractor was 15,970 pounds, or approximately eight tons.

Appellant explained that he was not operating a "through vehicle," as he was driving to his home on Cynthia Drive, within Brook Park. Nonetheless, Miles cited appellant for operating an overweight vehicle on local streets in violation of Brook Park Codified Ordinances Section 339.02 (hereafter referred to as "the Ordinance" or "the Brook Park Ordinance"), which provides in pertinent part as follows:

"No person shall operate or move a vehicle or combination of vehicles exceeding a size as specified in Section 339.03, or exceeding a gross weight of three and one-half tons, upon any street or highway under local jurisdiction, other than State routes, except pursuant to a permit granted by the Director of Public Safety. A permit need not be obtained for any movement necessitated by an emergency or for the purposes of making deliveries to or pickups from premises not located on State routes, provided such movement is conducted by the shortest route possible or by a route designated by the Director of Public Safety.

" * * *

"Streets or highways under local jurisdiction shall be posted with signs indicating 'no trucks—gross weight 3.5 tons' or words of similar import to apprise drivers of the limitations imposed by this section. No driver shall disobey the instructions indicated on any such sign."

Following a bench trial, appellant was found guilty and fined $100 plus costs. Execution of judgment has been stayed pending this appeal.

## II

For his first assignment of error, appellant contends that his conviction must be reversed because the traffic sign posted failed to provide him with notice that all overweight vehicles were prohibited on local streets, as required by the ordinance and R.C. 4511.07. We find this assignment of error to have merit.

R.C. 4511.07 provides in pertinent part that:

"No [local traffic ordinance or regulation] shall be effective until signs giving notice of the local traffic regulations are posted. * * *"

The Brook Park Ordinance likewise requires that streets under local jurisdiction shall be posted with signs which are appropriately worded to apprise drivers of the city's weight prohibition on local streets.

As to whether these notice requirements were satisfied with respect to appellant, we first note that the Ohio Department of Transportation's Manual of Uniform Traffic Control Devices (1987) indicates at Section 2B–1 that the standard signs shall be displayed for the specific purpose prescribed. The manual then lists the standard road signs, and groups them by number or series according to the purpose for which they are to be displayed. The series R–77 signs are the standard signs for prohibiting overweight vehicles, as the legends on these signs specifically advise drivers of the precise weight restrictions in effect. *Id.* at Section 2L–11. A different series of signs, the R–42 series, are the standard signs for prohibiting through vehicles, as the

legends on these signs clearly indicate that through vehicles are not permitted. *Id.* at Section 2J–2. Thus, to prohibit overweight vehicles, R–77 signs, and not R–42 signs, should be posted.

We further note that the phrase "thru vehicles" or "through vehicles" is not defined in the city's Traffic Code. Brook Park Codified Ordinances Section 301 *et seq.* Thus, because the phrase is not defined, the plain meaning should be applied. *In re Gwinn* (S.D.Ohio 1983), 34 Bankr. 936, 945. Webster's Third New International Dictionary (1986) 2386, defines "thru" as a variation of "through." "Through" when used as an adjective, as in this case, is in turn defined as "initiated at and destined for points *outside* a local zone." (Emphasis added.)

In accordance with the foregoing, we hold that the sign posted in this case was insufficient to advise appellant that the city completely prohibits all overweight vehicles, contrary to the notice requirements of the Brook Park Ordinance and R.C. 4511.07. Accord *Cleveland v. Schlappal* (May 27, 1982), Cuyahoga App. No. 44094, unreported, 1982 WL 5379; but, see, *Brook Park v. Pavlik* (June 12, 1987), Cuyahoga App. No. 52290, unreported, 1987 WL 13023.

The first assignment of error is sustained.

### III

■ Appellant next contends that his conviction must be reversed because the Brook Park Ordinance violates Section 2312, Title 49, U.S.Code App. This contention lacks merit.

Part of the Surface Transportation Assistance Act of 1982, Section 2312 provides as follows:

"(a) No State may enact or enforce any law denying reasonable access to commercial motor vehicles subject to this chapter between (1) the Interstate and Defense Highway System * * * and (2) terminals, facilities for food, fuel, repairs, and rest, * * *

"(b) Nothing in this section shall be construed as preventing any State or local government from imposing any reasonable restriction, based upon safety considerations, on any truck tractor-semitrailer combination in which the semitrailer has a length not to exceed 28½ feet * * *."

Appellant has presented no evidence to indicate, however, that his home qualifies as a terminal or facility for food, fuel, repair or rest. Moreover, he has failed to demonstrate that the Brook Park Ordinance was enacted to

further objectives other than safety. Accordingly, we overrule the second assignment of error.

## IV

■ Finally, appellant argues that because the Brook Park Ordinance prevents him from bringing his tractor to his home, it deprives him of his constitutional rights of life, liberty, and property without due process of law. We disagree.

We first note that all legislative enactments are entitled to a strong presumption of validity. *Schwan v. Riverside Methodist Hosp.* (1983), 6 Ohio St.3d 300, 301, 6 OBR 361, 362, 452 N.E.2d 1337, 1338. Courts must indulge and apply this presumption in order to uphold a statute assailed as unconstitutional if at all possible. *State v. Dorso* (1983), 4 Ohio St.3d 60, 61, 4 OBR 150, 151, 446 N.E.2d 449, 450.

Further, assuming that appellant urges a substantive due process violation, we note that a legislative enactment will withstand a challenge on substantive due process grounds if it is neither unreasonable nor arbitrary, and it bears a real and substantial relation to the public health, safety, morals, or general welfare. *Mominee v. Scherbarth* (1986), 28 Ohio St.3d 270, 274, 28 OBR 346, 349–350, 503 N.E.2d 717, 720–721.

We find the Brook Park Ordinance to be a reasonable police regulation, which substantially advances public safety, especially in residential areas. *Whitehall v. Moling* (1987), 40 Ohio App.3d 66, 69, 532 N.E.2d 184, 187–188. Thus, we reject appellant's claim that the Ordinance violates his rights of substantive due process.

■ We further conclude that the Ordinance does not violate appellant's rights of procedural due process because we believe that appellant has no protected liberty or property interest in bringing his tractor to his home. Accord *Rodic v. Thistledown Racing Club, Inc.* (C.A.6, 1980), 615 F.2d 736, 739–740, 16 O.O.3d 386, 388–390.

Accordingly, the third assignment of error is overruled.

The judgment of the trial court is reversed.

*Judgment reversed.*

NAHRA, P.J., and JOHN F. CORRIGAN, J., concur.

524

PRYATEL, J., dissents.

AUGUST PRYATEL, J., retired, of the Eighth Appellate District, sitting by assignment.

AUGUST PRYATEL, Judge, dissenting in part.

I dissent from the court's disposition of the first assignment of error holding that the sign posted in this case was insufficient to advise appellant that the city prohibits all overweight vehicles (other than enumerated exceptions) on residential streets.

The court's analysis of whether the sign in question conformed to Ohio Department of Transportation size requirements was not raised below. At no point in these proceedings has appellant denied that he actually observed the sign posted on the route where he was stopped. Indeed, appellant argues that the Ordinance was unconstitutionally vague as applied and that he observed the sign but did not comprehend its meaning.

Appellant's vagueness arguments are not novel. We rejected an identical argument in *Brook Park v. Pavlik* (June 18, 1987), Cuyahoga App. No. 52290, unreported, 1987 WL 13023. In *Pavlik,* it was argued that an identical road sign prohibited only through vehicles and not local traffic. We disagreed, stating, "the 'through vehicles' designation prohibits the use of the street for those overweight vehicles which are not making a delivery to or pickup from local premises. Other than a genuine emergency, this sign effectively prohibits any other use by overweight vehicles." *Id.* at 5–6. Appellant conceded that he had no legitimate business purpose for driving his commercial tractor in a residential area. According to Sergeant Miles, the police officer who stopped appellant (appellant did not take the witness stand), "his [appellant's] words were that he was stopping home to visit his very young * * * son, a couple months old, and that he was going on after that * * *" Here, appellant was to see his son for a very brief period of time and then continue on. That is exactly what the ordinance was designed to prevent—the use of trucks having a gross weight 3.5 tons or more on sidestreets that are not built to handle that heavy load and hence cause the deterioration of Brook Park's local roads as well as create traffic risks for children and other pedestrians in residential areas.

The majority position will have the ultimate effect of invalidating hundreds of road signs on which the legends "thru" or "through" appear. By declaring the sign vague, the court has necessarily concluded that persons "of common intelligence must necessarily guess at its meaning and differ as to its

application." *Connally v. General Constr. Co.* (1926), 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328; *Papachristou v. City of Jacksonville* (1972), 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110, 115.

The constitutional requirement of definiteness does not invalidate every statute which could have been drafted with greater clarity. *Rose v. Locke* (1975), 423 U.S. 48, 50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185, 188; *State v. Earlenbaugh* (1985), 18 Ohio St.3d 19, 21, 18 OBR 16, 17, 479 N.E.2d 846, 847–848. Since many statutes contain some inherent vagueness, all due process requires is that the law give sufficient warning that persons conduct themselves so as to avoid the prohibited conduct. *State v. Earlenbaugh, supra.* In construing the Ordinance, we must look to the legislative intent as expressed by the words employed and the purpose to be accomplished. *State, ex rel. Francis, v. Sours* (1944), 143 Ohio St. 120, 28 O.O. 53, 53 N.E.2d 1021; *Featzka v. Millcraft Paper Co.* (1980), 62 Ohio St.2d 245, 16 O.O.3d 280, 405 N.E.2d 264. Statutory provisions must be given a fair and reasonable construction in conformity with their general object in order to effectuate such object. *Mutual Bldg. & Inv. Co. v. Efros* (1950), 152 Ohio St. 369, 40 O.O. 389, 89 N.E.2d 648.

The "thru" designation should properly be read as a word of limitation that incorporates the Ordinance's exception for vehicles engaged in business deliveries, pick-ups or some emergency purpose. Hence, vehicles not engaged in a purpose excepted by the Ordinance would therefore be "thru" vehicles as indicated on the road sign, as opposed to vehicles stopping within the city for a legitimate business purpose. In my view, the sign affords persons of ordinary intelligence fair notice that the tractor portion of a tractor-trailer rig is prohibited in residential areas.

I would affirm.